UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MAVERICK KENDRICK,

                 Plaintiff,

       - against -                           No. 07-CV-5859 (CS)

GREENBURGH HOUSING AUTHORITY, and      **DECISION AND ORDER**
GREENBURGH TOWN HALL CLERK'S OFFICE,

                 Defendants.
------------------------------------------------------------------------x

Appearances:

Maverick Kendrick
Yonkers, New York
*Pro Se Plaintiff*

Martin S. Tackel
Tackel & Varachi LLP
White Plains, New York
*Counsel for Defendant Greenburgh Housing Authority*

Timothy W. Lewis
Town Attorney, Town of Greenburgh
Greenburgh, New York
*Counsel for Defendant Town of Greenburgh*

Seibel, J.

      Before the Court is Plaintiff's Motion for Summary Judgment, (Docs. 67, 69, 70, 71,

72),[1] Defendant Greenburgh Housing Authority's Motion for Summary Judgment, (Doc. 57),

---

[1]      Plaintiff is *pro se* and has filed a number of documents which purport to be Motions for Summary Judgment. Although it is not clear which of these documents Plaintiff intended as responses to Defendants' Motions for Summary Judgment, and which were intended as support for Plaintiff's own Motion for Summary Judgment, the Court will construe all of these documents as a combined support for

and Defendant Town of Greenburgh's[2] Motion for Summary Judgment, (Doc. 46).  For the reasons stated below, Defendant Greenburgh Housing Authority's Motion for Summary Judgment is granted, Defendant Town of Greenburgh's Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied.

I.      **BACKGROUND**

A.      **Facts**

The following facts are undisputed except where noted.

Plaintiff Maverick Kendrick is a 51-year-old male who entered into a lease agreement in 2003 with the Defendant Greenburgh Housing Authority ("GHA") for a five-bedroom apartment at 79 North Washington Avenue in Greenburgh, New York.  (Dep. at 25.)[3]  Plaintiff resided in this apartment with his children and step-children, some of whom were under 18 years old during the period relevant to this action.  (*Id.* at 27.)

During Plaintiff's tenancy at 79 North Washington Avenue, Plaintiff periodically reported to the GHA the required details of any wages earned by other members of his household.  (*Id.* at 37–39; 69–71; 89–91.)  Plaintiff also regularly reported to the GHA any changes in his household composition.  (*Id.* at 36; 162–65; 172–74; 190–91.)

Beginning in 2003, Plaintiff's relationship with Mr. John Afoun, the director of the GHA, was strained because Plaintiff felt that Mr. Afoun had a personal vendetta against him. Specifically, Plaintiff believed that Mr. Afoun resented him because he was "a strong man in the community that people respected" and because he "could stand up to" Mr. Afoun.  (*Id.* at 43.)

---

Plaintiff's own Motion for Summary Judgment as well as support for his opposition to the Defendants' Motions for Summary Judgment.

[2]      Plaintiff also refers to the Defendant Town of Greenburgh as "Greenburgh Town Hall Clerk's Office."  This Court refers to this Defendant as the "Town of Greenburgh" throughout this Decision.

[3]      "Dep." refers to the December 2, 2009, deposition of Maverick Kendrick.  (Doc. 47, Ex. B.)

This strained relationship persisted throughout the time Plaintiff lived at 79 North Washington Avenue.  (*Id.* at 44.)

From the time Plaintiff entered into the lease agreement for his apartment in 2003, until he was evicted in 2006, the apartment required a variety of repairs.  (*Id.* at 31–36; 63–69; 92–98.)  For example, in 2003, the kitchen tiles frequently popped up, especially when the floor was mopped; the radiators were falling apart; mold and mildew developed in the third floor bathroom; and the apartment needed to be repainted.  (*Id.* at 32–34.)  In 2004, tiles continued to pop up from the floors throughout the apartment; bathrooms on the second and third floor began leaking; there was mold growing on the walls and floors in a number of the bedrooms; and multiple windows in the apartment did not have pulleys, which made them dangerous because they could slam shut on their own.  (*Id.* at 63–67.)  Plaintiff put in a number of work orders with the GHA requesting repairs, but most of these problems were not remedied.  (*Id.* at 68–69; Doc. 64, Ex. H.)  In 2005, the condition of the apartment further deteriorated.  The radiators and windows remained in disrepair; mold continued to eat away at the floor and walls; and a pipe burst in the second floor bathroom, causing flooding in the apartment.  (Dep. at 93–98.)  When this pipe burst, the fire department had to turn off the water, and it subsequently issued Plaintiff a summons indicating that the electrical wiring in his apartment was old and in need of repair, and created a fire hazard.  (*Id.*)  Following Plaintiff's receipt of this summons the GHA repaired Plaintiff's living room floor and fixed the electrical wiring that the fire department had deemed dangerous.  (*Id.* at 97.)

In August 2005, Mr. Afoun sent Plaintiff a letter informing him that he needed to be relocated to another unit so that repairs to his unit could be made.  (Doc. 70 at 2.)  Plaintiff received a letter dated October 5, 2005, from the GHA informing him that he needed to be

relocated from his five-bedroom apartment into a four-bedroom apartment because of the conditions of his current unit and his health concerns. (Doc. 64, Ex. O.)[4] Plaintiff received another letter dated October 25, 2005, stating that because of his changed family composition,[5] he would be moved to a three-bedroom unit when one became available. (Doc. 64, Ex. P; Dep. at 114–15.) Plaintiff refused to be relocated, however, because he believed the necessary repairs could be undertaken without his family vacating the premises and because he felt his family composition necessitated a five-bedroom apartment. (*Id.* at 101–02; 107–15.)

In response to that refusal, GHA served on Plaintiff a thirty-day Notice of Termination of Tenancy dated November 21, 2005, as provided for in the lease. (Doc. 64, Ex. R; *see* Doc. 64, Ex. G ("Lease") at 6 ¶¶ 16–17.) The Notice advised that Plaintiff's lease was being terminated because of his refusal to move to allow repairs to his current unit, and that if he did not vacate by December 31, 2005, the expiration date of his lease, GHA would commence eviction proceedings.

Following Plaintiff's receipt of letters from the GHA indicating that it intended to relocate him, Plaintiff filed a series of complaints against the GHA. These included complaints filed on December 8, 2005, with the New York State Attorney General's Office; on December 21, 2005, with the United States Department of Housing and Urban Development ("HUD"); on February 24, 2006, with then–United States Senator Hillary Clinton; on March 10, 2006, with the

---

[4]      Plaintiff had complained to GHA during the summer of 2005 about various problems with the apartment, including mold which he alleged was sickening him and his family. (Dep. 92–97; Aff. of George Lux (Doc. 60) ¶¶ 3–5.)

[5]      On September 21, 2005, Plaintiff had informed the GHA that his household, which at one point consisted of six persons, (Doc. 62, Ex. C), now consisted only of himself and three children. (Doc. 64, Ex. G.)

District Attorney of Westchester County; and on May 12, 2006, with the Westchester County Human Rights Commission.  (Compl.[6]; Doc. 69.)

An administrative hearing was held before Defendant's Board of Commissioners and the GHA's determinations that Plaintiff would have to vacate for repairs and accept a smaller unit were upheld.  (Doc. 61 ¶¶ 3–4.)  In March 2006, the GHA served Plaintiff with a Hold-Over petition and sought to evict Plaintiff and his family.  (Doc. 72, Ex. 9; Dep. at 164–67; 265–66.)  On April 27, 2006, Plaintiff was served with a Notice of Eviction indicating that a warrant to evict him from his apartment had been authorized.  (Doc. 47, Ex. D; Dep. at 175–76.)  In response, Plaintiff appeared in the Town Justice Court on April 28, 2006, and sought an Order to Show Cause to stay the Warrant of Eviction.  (Doc. 64, Ex. X; Dep. at 175.)  The Court granted Plaintiff's request to stay the Eviction.  (Dep. at 175–79; Doc. 64, Ex. X.)  Plaintiff failed to appear on the May 10, 2006 return date of the Order to Show Cause, however, and the Judge dismissed the petition.  (Dep. at 181.)  On May 12, 2006, Plaintiff was at the GHA's administrative office to notify officials of a change in his family composition.  (*Id.* at 190–94.)  While there, Plaintiff was informed by a neighbor that she had been at the Town Justice Court on May 10, 2006, and that the Court had authorized Plaintiff's eviction at that time.  (*Id.* at 184.)  Plaintiff immediately sought from the Town Justice Court a second Order to Show Cause to stay the Warrant of Eviction.  (*Id.* at 197–98; Doc. 64, Ex. AA; Doc. 71.)  The Court granted this stay as well, but Plaintiff was unaware of that decision because, having heard that the eviction was taking place, he left the Court before the Judge had made a determination.  (Dep. at 203–04; 207; 286–87; Doc. 64, Ex. AA.)  During Plaintiff's visits to the Town Justice Court on April 28 and

---

[6]        "Compl." refers to Plaintiff's Amended Complaint filed on September 14, 2007.  (Doc. 4.)

May 12, 2006, Plaintiff felt he was mistreated, given a hard time, and given the run-around by Court personnel.  (*Id.* at 199; 269–74; 278–82.)

### B.    Procedural Background

On September 14, 2007, Plaintiff filed an Amended Complaint, (Doc. 4), which was dismissed for lack of subject matter jurisdiction and failure to state a claim, (Doc. 8).  On appeal, the Second Circuit vacated the District Court's order and remanded the case to this Court

> for further proceedings on appellant's Fair Housing Act retaliation and familial status discrimination claims.  Plaintiff avers that he was evicted shortly after making complaints against the alleged discriminatory practices of the Greenburgh Housing Authority, which could constitute retaliation under the Act.  Plaintiff further claims that his rent was increased based on his minor children's summer income, which could constitute familial status discrimination in violation of the Act.  *See* 42 U.S.C. §§ 3604(b), 3617; *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972).  Upon remand, the district court may consider whether to exercise supplemental jurisdiction over plaintiff's state law claims.

(Doc. 11.)  On April 17, 2009 the case was reassigned to me.  (Doc. 24.)  On July 7, 2010, Defendant Town of Greenburgh filed a motion for summary judgment.  (Doc. 46.)  On July 12, 2010, Defendant GHA filed a motion for summary judgment.  (Doc. 57.)  Between May 28 and September 20, 2010, Plaintiff filed a series of papers which appear to be a motion for summary judgment and opposition to the Defendants' motions for summary judgment.  (Docs. 67, 69, 70, 71, 72.)

## II.    LEGAL STANDARD

### A.    Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  Where, as here, an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (citation omitted).  In the event a party "fails to properly address

7

another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

"Though caution must be exercised in granting summary judgment where intent is genuinely in issue, summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact."  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994) (internal citations omitted); *see Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("[S]ummary judgment may be appropriate even in the fact-intensive context of discrimination cases. . . . [T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation.") (third alteration in original) (internal quotation marks omitted).

### B.    Pleading Standards for *Pro Se* Plaintiffs

*Pro se* pleadings are generally held to "less stringent standards than formal pleadings which are drafted by lawyers."  *Boykin v. Key Corp.*, 521 F.3d 202, 214 (2d Cir. 2008) (citation omitted); *see McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (Where a plaintiff is proceeding *pro se,* the court must review the *pro se* party's supporting papers liberally, and "interpret them 'to raise the strongest arguments that they suggest.'").  Nonetheless, in order to survive summary judgment a *pro se* plaintiff must "abide by these evidentiary requirements . . . , which means he must offer some hard evidence showing that [his] version of the events is not wholly fanciful."  *McAfee v. Law Firm of Forster & Garbus*, No. 06-2925, 2008 WL 3876079, at

*2 (E.D.N.Y. Aug. 18, 2008) (alteration in original) (internal quotation marks omitted)[7]; *see Saldana v. Local 32B-32J Serv. Emps. Int'l Union*, No. 03-1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005) ("Even a *pro se* plaintiff . . . cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint.  Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts.") (internal citations omitted).

### C.  Fair Housing Act

The Fair Housing Act ("FHA") provides that it is unlawful to discriminate in the sale or rental of housing "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).  It further provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.  A court's dismissal of a plaintiff's discrimination claim under Section 3604 "does not automatically require dismissal of plaintiff['s] retaliation claim" because a meritorious claim under Section 3604 is not a prerequisite for a retaliation claim under Section 3617.  *Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 431 (S.D.N.Y. 2005) (citing *Marks v. Bldg. Mgmt. Co.*, No. 99-5733, 2002 WL 764473, at **10–11 (2d Cir. Apr. 26, 2002), *aff'd*, 212 F. App'x 38 (2d Cir. 2007)).

---

[7]     Copies of all unpublished opinions cited herein will be sent to the *pro se* Plaintiff along with this Memorandum Decision and Order.

## III.    DISCUSSION

The Second Circuit remanded this case for further proceedings on Plaintiff's FHA

retaliation and familial status discrimination claims.  (Doc. 11.)  Defendant Town of Greenburgh

has interpreted Plaintiff's allegations to include a First Amendment retaliation claim as well as a

Section 1983 conspiracy claim, and directs its motion for summary judgment to these claims.

(Greenburgh Town's Mem. at 7–11.)[8]  As the Second Circuit remanded this case specifically—

and exclusively—for "further proceedings on appellant's Fair Housing Act retaliation and

familial status discrimination claims," (Doc. 11), this Court considers the Town of Greenburgh's

arguments to the extent they apply to the FHA claims.[9]

### A.    Familial Status Discrimination under the Fair Housing Act

Plaintiff appears to claim that he was discriminated against by the GHA on the basis of

family status because his rent was increased based on his minor children's summer income.

Specifically, in his amended complaint Plaintiff asserted that when his "children worked summer

jobs, they were still students in school.  The Greenburgh Housing Authority would raise the

Plaintiff's rent.[10]  This act was unlawful.  Plaintiff would ask other tenants did there [sic] rent

increase.  They would say no."  (Compl. at 7.)

---

[8]      "Greenburgh Town's Mem." refers to Defendant Town of Greenburgh's Memorandum of Law in
Support of its Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary
Judgment.  (Doc. 46.)

[9]      An FHA retaliation claim is in some respects governed by standards similar to those governing
First Amendment retaliation claims.  *Marks*, 2002 WL 764473, at *13–14.  To the extent that Plaintiff
advances a conspiracy claim, summary judgment is granted on the ground that Plaintiff's allegations in
that regard are wholly conclusory.

[10]      This Court addresses Plaintiff's FHA familial status discrimination claim only as to the
Defendant GHA as this claim does not appear applicable to the second Defendant, Town of Greenburgh,
in any way.  In its remand, the Second Circuit asserted that Plaintiff may have a basis for a FHA familial
status discrimination claim based on his assertion that his rent was increased because of his minor
children's summer income.  Plaintiff does not allege anywhere in his amended complaint, moving papers,
or deposition that the Town of Greenburgh was involved in the GHA's rent calculations as they applied to
Plaintiff or otherwise.  This Court cannot identify any conceivable way in which Plaintiff's familial status

The FHA defines familial status as "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent or another person having legal custody."  42 U.S.C. § 3602(k); *Pandozy v. Segan*, 518 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing 42 U.S.C. § 3602(k)), *aff'd*, 340 F. App'x 723 (2d Cir. 2009).  Families with children are a protected class under the FHA, and discrimination in the terms, conditions, or privileges of sale or rental of a dwelling on account of familial status is a violation of the FHA.  *See Khalil v. Farash Corp.*, 277 F. App'x 81, 83 (2d Cir. 2008).  In evaluating claims of intentional discrimination under the FHA, courts have generally applied the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Frazier v. Rominger*, 27 F.3d 828, 831 (2d Cir. 1994) (*McDonnell Douglas* burden-shifting framework is applicable to FHA cases).

To determine whether Plaintiff can survive a motion for summary judgment on this claim, the Court must first analyze whether plaintiff has set forth a *prima facie* case of discrimination under Section 3604(b) of the FHA.  "The essential elements of a *prima facie* case are designed to reveal whether it is possible to infer that the plaintiff has been the victim of discrimination."  *Ramos v. U.S. Dep't of Hous. & Urban Dev.*, No. 96-5552, 1999 WL 1129065, at *5 (S.D.N.Y. Dec. 8, 1999).  In *Ramos* this court explained that the plaintiff could prove a *prima facie* case under Section 3604(b) by showing "(1) that she is a member of a protected class; (2) that she applied to and was qualified to sublet her apartment; and (3) that her application was rejected under circumstances that give rise to a reasonable inference that she was discriminated against on the basis of her ethnic background."  *Id.*  By analogy, in this case,

---

discrimination claim could be sustained against the Town of Greenburgh.  Thus, to the extent that Plaintiff sought to bring this claim for familial status discrimination under the FHA against the Defendant Town of Greenburgh, summary judgment is granted on that claim as to that Defendant.

Plaintiff could prove a *prima facie* case of familial status discrimination under Section 3604(b) by showing that (1) he is a member of a protected class; (2) he was entitled to rental fees that did not rise based on his minor children's incomes; and (3) his rent was raised under circumstances that give rise to a reasonable inference that he was discriminated against on the basis of his familial status.

The Plaintiff and (at least some of) his children appear to meet the criteria of a family and therefore are members of a protected class under the FHA.  (*See*, *e.g.*, Dep. at 27 (Janeil was 19 at time of 2009 deposition; thus Janeil was under 18 between 2003 and 2006, the years relevant to this action); 42 U.S.C. § 3602(k).)  Nonetheless, Plaintiff cannot establish a *prima facie* case of familial status discrimination because he has not set forth even a scintilla of evidence to support his claim that the GHA actually raised his rent on account of his minor children's summer or part-time income.  *See Fujitsu*, 247 F.3d at 428 (non-movant cannot "rely on conclusory allegations or unsubstantiated speculation" to survive motion for summary judgment) (citation omitted).  Putting aside that Plaintiff's motion submission is unsworn and does not include a Local Rule 56.1 Statement of Material Facts,[11] neither Plaintiff's moving papers nor his exhibits include any factual underpinning for his claim that his rent was raised as a result of his minor children's summer income.[12]  In addition, Plaintiff was unable to support this claim in his

---

[11]     On July 12, 2010, the GHA served on Plaintiff and filed a "Notice to *Pro Se* Litigant Who Opposes a Motion for Summary Judgment," and Plaintiff was thus on notice that he needed to supply admissible evidence and provide a Rule 56.1 statement.  (Doc. 65.)  *See Stephen v. Maximum Sec. & Investigations, Inc.*, No. 99-4313, 2001 WL 30449, at *2 (S.D.N.Y. Jan. 10, 2001) (Plaintiff was provided "with a 'Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment,'" and Court therefore found he was "put on notice as to his obligations to gather and present evidence").

[12]     The closest Plaintiff comes to setting forth specific allegations regarding his familial status claim in his moving papers is in his reiteration of the Second Circuit's language when he states in a conclusory manner:  "Plaintiff further claims that his rent was increased based on his minor children's summer income, which could constitute familial status discrimination."  (Doc. 67-D, Ex. 14-B.)

December 2, 2009 deposition.  Instead, Plaintiff made the following series of remarks regarding

his children's income during his deposition:

> Q:  But you did report [your children's incomes from part time jobs] each time?
> A:  Yes, I did.  Q:  And do you recall how much in 2003 your rent was increased
> as a result of reporting your children's income, in dollars? A:  No, I don't recall.
> Q:  Was it more than $100 a month?  A:  No.  Q:  Was it more than 50 a month,
> based on their income added to yours?  A:  It was like about $50, something like
> that.  Q:  Fifty dollars?  A:  I don't recall.  (Dep. 39:2–25.)

> Q:  And did the children's income that was included in the total calculation
> increase your rent in any way during 2004?  A:  I don't recall.  Q:  All right.
> A:  I'd get notices that my rent was being increased.  Q:  Did it say because your
> children—  A:  I never had a—you know, my rent should have been—rather than
> increases, it should have been a decrease in my rent many times. . . .  Q:  But it
> didn't say in those notices because your children are working?  A:  I don't recall.
> I don't think so.  I'm not really sure.  Q:  So as we're sitting here, you don't recall
> whether or not—  A:  I think what it was—what I think it is is that every year you
> sign a new lease, your rent went up.  Q:  All right.  And they gave you notice of
> that?  A:  I believe so.  Q:  But you don't recall any specific notice saying because
> one or more of your kids were working that will increase your rent?  A:  No, not
> that I recall.  (Dep. 70:2–71:8)

> Q:  So do you have any recollection whether or not her—Tamara's projected or
> actual additional income was included in any rent increase that you had?  Do you
> know anything about that?  A:  No, it might have—  Q:  You don't know?  A:  I
> don't.  I'm not sure.  I'm not sure of that.  Q:  Going back to Exhibit F, the family
> composition and income items.  Is there anything in Exhibit F that shows any of
> the kids having extra income on their own?  A:  No.  Q:  Okay.  Is that accurate as
> of that time?  A:  Yes.  (Dep. 89:19–90:10.)

> Q:  Now, you mentioned before that some of your children were working during
> this year of 2005 and early 2006?  A:  The children worked at the summer
> program.  That's not considered work.  That's not considered work.  Q:  Was
> your—  A:  The children, Justin, Neil and Tyisha, that wasn't considered work.
> That was just a little program that supported their summer program, tutoring and
> being mentors to students.  He put that in there and wanted to calculate that as
> income.  That's not earned income.  Q:  Do you remember whether or not your
> rent was raised specifically to take into account the kids' part-time income?  Is
> that something you recall or not?  A:  I don't recall that.  (Dep. 146:19–147:12.)

As illustrated above, Plaintiff asserts in his deposition that the GHA raised his rent at

various times.  Yet he provides no basis (documentary or otherwise) for the assertion that such

rental increases were correlated with any of his children's summer or part-time income, as opposed to being routine increases authorized by the lease.  (Lease at 3 ¶ 8.)[13]  Thus, as evidenced by Plaintiff's moving papers and deposition testimony, Plaintiff has not offered any evidence upon which a rational jury could conclude that his rent was raised because the GHA included his minor children's summer or part-time income in its rent calculations.  *See Chambers*, 43 F. 3d at 40 ("summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact").

By contrast, Defendant GHA has supplied a series of affidavits in which the affiants affirm, based on personal knowledge and review of the pertinent documents, that Plaintiff's rent was never raised based on his children's income.  These include the affidavits of:  Kisha Philips, the Intermediate Clerk of the Town of Greenburgh Housing Authority during the times relevant to this action, who stated:

> [A]t no time during 2003 through 2005 was Mr. Kendrick's rent improperly increased as a result of any income earned by one or more of the minor children or stepchildren in his household (or of any child over the age of 18 who was a full-time student), and further that there is no documentation in Mr. Kendrick's Tenant File indicating that the Housing Authority improperly raised Mr. Kendrick's rent during any year of his tenancy due to any income earned by any of his household members.

(Doc. 62 ¶ 3); Raju Abraham, the Senior Bookkeeper for the Town of Greenburgh Housing Authority from 1999 through 2008, who made the same statement as Ms. Philips, (Doc. 63 ¶ 4);

---

[13]     While Plaintiff's Complaint alleges that other tenants did not experience rent increases, this allegation is insufficient for several reasons.  First, on a motion for summary judgment a plaintiff may not rely on the allegations in the Complaint, but rather must present admissible evidence.  *See* Fed. R. Civ. P. 56(c)(1).  Second, even if Plaintiff had testified to the statements of his neighbors at his deposition, that testimony would be hearsay, *see* Fed. R. Evid, 801(c), and thus inadmissible.  *See* Fed. R. Civ. P. 56(c); *Major League Baseball*, 542 F.3d at 310.  Finally, the experience of other tenants is relevant only if they were similarly situated to Plaintiff, *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 77 (2d Cir. 2001); *Springle v. Metro. Transp. Auth.*, No. 06-0734, 2008 WL 331362, at *12 (S.D.N.Y.  Feb. 1, 2008), and Plaintiff has provided no information that could support such a conclusion.

and Laurie Naples, the Public Housing Director of the Town of Greenburgh Housing Authority
from 2003 through 2005, who likewise stated that "at no time during 2003 through 2005 (when I
resigned from that position) was Mr. Kendrick's rent improperly increased as a result of any
income earned by one or more of the minor children or stepchildren in his household (or of any
child over the age of 18 who was a full-time student)," (Doc. 59 ¶ 3).  Plaintiff has not disputed
the statements set forth in these affidavits or provided contrary evidence.

Even if this Court disregards the testimony of the GHA employees, as they are interested
witnesses who a jury is not required to believe, *see Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133, 151 (2000) (on motion for summary judgment district court "must disregard all
evidence favorable to the moving party that the jury is not required to believe"); *In re Dana
Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) ("court considering a summary judgment motion '*must
disregard all evidence favorable to the moving party that the jury is not required to believe*'")
(citing *Reeves*, 530 U.S. at 151) (emphasis in original); *Williams v. City of White Plains,* No. 08-
5210, 2010 WL 2465405, at *1 (S.D.N.Y. June 16, 2010) ("[A]t the summary judgment stage,
the Court should disregard all evidence favorable to the moving party that the jury is not required
to believe. . . .  Such disposable evidence includes testimony and affidavits from interested
witnesses.") (internal quotation marks omitted), Plaintiff's claim of familial status discrimination
under the FHA still must fail because Plaintiff himself has not set forth any evidence upon which
a reasonable jury could conclude that his rent was, in fact, increased as a result of his minor
children's part-time or summer income.  Had Plaintiff's children's income indeed influenced his
rent calculations, Plaintiff should have been able to produce a document or witness supporting
that notion.  There being no such evidence, there is no genuine issue of material fact for trial.

The Court therefore grants Defendant GHA's motion for summary judgment on Plaintiff's claim of familial status discrimination under the FHA.

### B.    Retaliation under the Fair Housing Act

I next address whether Plaintiff can survive a motion for summary judgment on his retaliation claim under Section 3617 of the FHA.  A violation of Sections 3603 through 3606 of the FHA may, but will not always, be involved in a FHA retaliation claim.  *See Lynn*, 373 F. Supp. 2d at 431; *see also Stackhouse v. DeSitter*, 620 F. Supp. 208, 210–11 (N.D. Ill. 1985) (delineating three circumstances under which a plaintiff could bring a § 3617 claim:  "(1) in the exercise or enjoyment of any right protected by §§ 3603-3606; (2) on account of the person's having exercised or enjoyed such a right; and (3) on account of his having aided or encouraged any other person in the exercise or enjoyment of such a right.").  In order to prevail on a retaliation claim under Section 3617 of the FHA, plaintiffs must establish:

> (1) that they engaged in protected activity by opposing conduct prohibited under the FHA; (2) that defendants were aware of that activity; (3) that defendants subsequently took adverse action against plaintiffs; and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse action.

*Lynn*, 373 F. Supp. 2d at 432 (citing *Marks*, 2002 WL 764473, at *9).  FHA retaliation claims, like FHA discrimination claims, are analyzed under the *McDonnell Douglas* burden shifting standard.  *Id.*

Turning first to the Defendant GHA, Plaintiff's allegation appears to be that the GHA retaliated against him when it sought to relocate Plaintiff to another public housing unit because it deemed his apartment too large for his family composition and in too dangerous a condition; when it terminated his lease at the end of its term; and ultimately when it evicted him.

16

Specifically, Plaintiff apparently alleges that such actions were taken in response to Plaintiff's complaints about the allegedly discriminatory practices of the GHA.  (Compl. at 5, 8.)

"Protected activity under the FHA refers to action taken to protest or oppose statutorily prohibited discrimination."  *Stable v. Kelly Towers Assocs.*, No. 05-3132, 2007 WL 80866, at *2 (S.D.N.Y. Jan. 10, 2007) (internal quotation marks omitted); *see* 24 C.F.R. § 100.400(c)(5) (prohibiting "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act.").  Plaintiff sets forth evidence in his moving papers and in his deposition illustrating that he repeatedly protested the GHA's October 2005 determination that he needed to vacate his apartment in order for the necessary repairs to be made and because it was too large for his family composition.[14]

Filing complaints (as Plaintiff did when he filed complaints with the Human Rights Commission and the Attorney General's Office), and even less formal means of protest such as letter writing, (as Plaintiff did when he wrote to Mr. Feiner and requested an administrative hearing with HUD or when he informed the commissioner that he refused to vacate his apartment) constitutes "protected activity" under the FHA *if* it is lodged in protest of statutorily prohibited discrimination.  *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002) (filing of HUD complaint was protected activity because it was filed in opposition to an act or practice made unlawful by the applicable anti-discrimination statutes); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (The "law is clear that opposition to Title VII violation need not rise to the level of a formal complaint in order to

---

[14]     Plaintiff refused to vacate his apartment for repairs because he was unaware of either any other tenants who were forced to leave their apartments when repairs were undertaken or any "rules" requiring tenants to leave for such repairs.  (Dep. 101:9–102:17.)  Plaintiff objected to being placed on a list for transfer from his five-bedroom apartment to a three-bedroom apartment because he knew of other situations where, for example, two older people were allowed to stay in a four bedroom apartment, and he thus felt there was no justifiable basis for requiring him to move.  (*Id.* 114–19.)

17

receive statutory protection," and "notion of opposition includes activities such as making complaints to management [and] writing critical letters" protesting discrimination) (internal quotation marks omitted)[15]; *Stable*, 2007 WL 80866, at *2 ("Lodging a complaint with HUD objecting to rent increases does not constitute a 'protected activity' as it [is] unrelated to a FHA discriminatory housing proceeding."); *Dean v. Jones*, No. 09-1102, 2010 WL 1873089, at *4 (D. Or. Mar. 2, 2010) (plaintiff's retaliation claim failed because plaintiff did not allege he was member of protected class and thus he did not engage in protected activity by complaining of discrimination under the FHA); *Fincher v. South Bend Hous. Auth.*, 612 F. Supp. 2d 1009, 1024 (N.D. Ind. 2009) (although plaintiff asserted he was discriminated against because of previously filed lawsuit against housing authority, plaintiff "was not engaged in activities protected by the FHA and could not have been retaliated against in violation of Section 3617" because there was "no suggestion that he complained about discrimination [on the basis of familial status] or tried to enforce any other right that could be construed as protected by the FHA").

Despite the fact that Plaintiff has set forth evidence that he vocally protested the GHA's efforts to relocate and ultimately evict him, this Court cannot find any basis upon which the GHA's conduct could be considered statutorily prohibited discrimination.  Neither the FHA nor any other applicable statute prohibits a housing authority from insisting that tenants vacate an apartment in order for repairs to be conducted, or from determining that particular family compositions are entitled to smaller or larger housing units on the basis of such composition. Neither Plaintiff's ardent disagreement with the GHA's determination that his apartment was in

---

[15]     "Protected activity" under Title VII and the FHA are analyzed under same standards.  *See*, *e.g.*, *Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II*, 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006) (noting that "[p]rotected activity under the FHA refers to 'action taken to protest or oppose statutorily prohibited discrimination,'" and citing to *Cruz*, 202 F.3d at 566, which addresses a Title VII claim).

18

such a state of disrepair that Plaintiff needed to vacate in order for proper repairs to be made, nor

his disagreement with the GHA's decision that his family composition warranted only a three-

bedroom apartment, make the GHA's determinations statutorily prohibited.  Plaintiff may or may

not be correct that the GHA was wrong with respect to their assessments in these matters, but

being wrong does not inherently render the conduct statutorily prohibited discrimination.  In

other words, the conduct Plaintiff opposed was not conduct prohibited under the FHA.  *See Lynn*,

373 F. Supp. 2d at 433.  Nor does Plaintiff allege that the GHA's determinations that he needed

to vacate for repairs or that his family composition entitled him only to a three-bedroom

apartment were merely pretext for an underlying prohibited discriminatory motive such as race

or familial status.  Instead, by Plaintiff's own account, it appears that any unjustified desire to get

rid of Plaintiff (if there was one) was founded on personal disdain for the Plaintiff.  For example,

Plaintiff stated that he believed Mr. Afoun had a personal vendetta against him "[f]rom day one"

because he resented that Plaintiff was "a strong man that could stand up to him" and was a "man

in the community that people respected."  (Dep. at 40:5–45.)  Given the evidence in this record,

this Court cannot find that there is a genuine dispute of material fact as to whether Plaintiff was

retaliated against by the GHA for opposing statutorily prohibited discrimination.

Moreover, the documentary record is clear that the complaints raised by Plaintiff, at least

to the extent their dates can be ascertained,[16] came *after* the GHA decided that he needed to

---

[16]    Plaintiff attached copies of the following documents as exhibits in his moving papers:  a
November 28, 2005 letter from Plaintiff to Mr. Paul Feiner, Town Supervisor of the Town of Greenburgh,
requesting "a hearing with [*sic*] HUD main office," (Ex. 4); a discrimination complaint filed on December
5, 2005, with the Attorney General's Office, wherein Plaintiff asserted he was being discriminated against
because the GHA insisted that he "move in order to allow them to repair [his] house" despite Plaintiff's
certainty that it was unnecessary for him to move out in order for the repairs to take place, (Ex. 5); a
complaint filed with the Human Rights Commission on May 12, 2006, asserting that he had been
"continually harassed and abused by Mr. A[foun]" and that he believed Mr. Afoun was "on a mission to
change the building into higher rental units," (Ex. 8); a newspaper article and letter to the editor written

vacate for repairs, was entitled to only three bedrooms, and would have his lease terminated as of

December 31, 2005.  These determinations were transmitted by letters dated October 5, 2005,

October 25, 2005, and November 21, 2005, respectively.  This first protest for which Plaintiff

provides evidence is a November 28, 2005 letter to the Town Supervisor.  Where the adverse

action *precedes* the Plaintiff's complaints, Plaintiff cannot meet the subsequent-adverse-action or

causal-connection prongs of his *prima facie* case.  *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d

Cir. 2001) (" The plaintiff's burden at the beginning of the case is a light one, usually demanding

only that the protected activity preceded the adverse action in order to satisfy the causation

requirement.").  In addition, to the extent any adverse actions, such as the actual eviction, came

after Plaintiff's complaints to various authorities, Defendant has set forth a legitimate, non-

retaliatory basis for these actions—to wit, the pre-complaint determinations reflected in the three

letters, (Doc. 70 at 2; Doc. 64, Ex. O; Doc. 64, Ex. P; Dep. at 114–15)—and Plaintiff has

presented no evidence that those reasons are pretextual.  *See Jackson v. N.Y.C. Transit*, 348 F.

App'x 666, 669 (2d Cir. 2009) (affirming district court's grant of summary judgment because

plaintiff failed to rebut defendant's "legitimate, non-discriminatory reason" for the adverse

action and because plaintiff "offered no evidence that would permit a reasonable fact-finder to

infer that the [defendant's] stated reason was pretextual").  That non-retaliatory actions set in

motion before Plaintiff's speech do not culminate until after he has protested does not make that

culmination retaliatory.  *See*, *e.g.*, *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d

Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job

---

by Plaintiff which criticized the GHA, and in particular Mr. Afoun and Ms. Naples.  (Ex. 14-A.)  Plaintiff
has not provided information as to the newspaper in which these were published, or when they were
published.  The article includes the statement:  "This is the price tag in 2005," which would seem to
indicate it was published some time in 2005.  (Ex. 14-A.)  In Plaintiff's deposition he states that he
published an article about Mr. Afoun and Laurie Naples in 2004, (Dep. 80:24–81:12), but it is not clear if
he is referring to the article he supplied as a exhibit or to another article.

actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Turning next to the Defendant Town of Greenburgh, Plaintiff's claim for retaliation is similarly deficient.  The basis upon which Plaintiff alleges that the Town of Greenburgh retaliated against him is unclear, but he appears to allege that the Town of Greenburgh (via the Town Hall Clerk's Office) retaliated against him because of issues he previously had with Town police officers due to parking tickets that were placed on his brother's vehicle.  Specifically, Plaintiff asserts that the Town of Greenburgh would "ticket [Plaintiff's] brothers [*sic*] truck almost everyday" when Plaintiff was living at 79 North Washington Avenue.  (Doc. 71.)[17]  The retaliatory conduct that Plaintiff seems to attribute to the Town of Greenburgh involves Plaintiff's appearance at the Town Justice Court on April 28 and May 12, 2006, when he was seeking to have his Warrant of Eviction stayed, and the clerks allegedly gave him a "hard time" and the "run around," and required him to return to court "five times."  (Dep. 199:5, 199:23, 178:7, 196:11, 170:5, 183:17, 185:24, 202:13, 285:4–5.)  These subjective impressions are insufficient to make out a *prima facie* case of retaliation.  *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 304 (S.D.N.Y. 2009) (finding "no evidence in the record from which a jury could conclude that Plaintiff's requests were intentionally denied or that the efforts made to resolve the problems . . . were unreasonable," and that plaintiff offered "only her subjective belief that [defendant] could have addressed the problems more quickly and more effectively," and thus concluding that plaintiff's "speculation" regarding defendant's retaliatory conduct was insufficient to survive summary judgment).

---

[17]  Nowhere in the record does Plaintiff assert that the Town's allegedly retaliatory conduct was in response to his opposition to the GHA's efforts to relocate and ultimately evict him.

Even if Plaintiff had provided concrete examples of mistreatment by Town clerks, a claim of FHA retaliation would, as discussed in greater detail above, require that the Town of Greenburgh took adverse action against Plaintiff subsequent to Plaintiff's engaging in protected activity by opposing conduct prohibited under the FHA, that the Town was aware of Plaintiff's activity, and that there was a causal connection between the protected activity and the adverse action. *Lynn*, 373 F. Supp. 2d at 432. First, there is no evidence that the Town police officers issued tickets in a discriminatory manner which violated any prohibition of the FHA, or that Plaintiff believed the officers' conduct to violate the FHA. Further, Plaintiff does not allege that he took any action to oppose this conduct—*i.e.* that he engaged in protected activity—and thus a claim for retaliation must fail. Nor has he presented any evidence that the Town of Greenburgh was aware that Plaintiff had protested actions of the GHA. The only 'conduct' Plaintiff engaged in *vis-a-vis* the Town was when he appeared at the Town Justice Court in an effort to have his eviction stayed. Moreover, although Plaintiff uses the word "retaliation" with respect to the Town of Greenburgh's conduct, all of his statements belie a claim of retaliation as to this Defendant. For example, Plaintiff made the following remarks with respect to the Town Justice Court clerks during his deposition:

> Q:  Do you think they were retaliating against you?  A:  I just call it not allowing me to have due process.  They didn't—they stopped me from due process. . . . I felt it was a vendetta and they just wanted to mess with me, make my life a living hell, that's all.  I don't characterize they was racist or anything like that. . .  I call it retaliation and vendetta.  Q:  When you say "retaliation," is it because you had done something and they were doing something to get you back or it wasn't really that?  A:  No, I'm trying to—I'm trying to stop a process of the eviction.  And I would think they would be all open arms to do this, just get him out the way, let the judge sign if the judge going to sign.  If she not, let the man make his next move.  Let him do what he's going to do.  That didn't happen.  I got no cooperation from the court.

(Dep. 278–80.)  Plaintiff further asserted that he believed his experiences on April 28 and May 12, 2006 with the Town were unrelated to his experiences and interactions with the GHA.  (*Id.* at 289–90.)  It is therefore clear that even Plaintiff himself does not actually believe that the Town of Greenburgh was retaliating against him for his actions or conduct (let alone actions or conduct protected by the FHA), but instead was (in Plaintiff's mind) harassing him baselessly.

Finally, to successfully claim that Defendant retaliated against him for purposes of the FHA, Plaintiff would need to establish that Defendant's conduct was actually adverse to him. While it may have been annoying that the Town Justice Court clerks were not especially receptive or even were rude, Plaintiff has not offered evidence indicating that any conduct by the Clerks resulted in Plaintiff's being denied a stay of his eviction or suffering any other adverse action.  Indeed, Plaintiff acknowledges that he got the relief he sought on both April 28 and May 12, 2006; he simply did not remain at the Court long enough on May 12, 2006 to learn that the Judge had ordered the stay.  (Dep. 179–80; 269–73; 285–87.)  Having not suffered any "materially adverse effect," Plaintiff cannot prevail on his retaliation claim versus the Town of Greenburgh.  *Marks*, 2002 WL 764473, at *13.

Therefore, to the extent that Plaintiff sought to bring this claim for retaliation under the FHA against the Defendant Town of Greenburgh, this Court grants Defendant's Motion for Summary Judgment, as there are no genuine issues of material fact for trial.

### C.    Supplemental Jurisdiction Over State Law Claims

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Having determined

that all of the claims over which this Court has original jurisdiction should be dismissed, I

decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law causes of

action. *See id.*; *see also* 28 U.S.C. § 1367(c)(3).

## IV.   CONCLUSION

For the reasons stated above, Defendant GHA's Motion for Summary Judgment is

GRANTED, Defendant Town of Greenburgh's Motion for Summary Judgment is GRANTED,

and Plaintiff's Motion for Summary Judgment is DENIED.  Plaintiff's federal claims are

DISMISSED with prejudice and his state claims are DISMISSED without prejudice.  The Clerk

of the Court is respectfully directed to terminate the pending motions, (Docs. 46, 57, 69, 70, 72),

and close the case.

SO ORDERED.

Dated: March 22, 2011
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.